**LILLIS FAMILY TRUST**
vs.
**Thomas and Patricia POMAKIS**

**No. 24427**

Housing Court Department/Suffolk, ss.
City of Boston Division
Summary Process
Commonwealth of Massachusetts

**October 7, 1982**

Richard T. Rook, Noreen B. Davis, counsels for plaintiff
Terrence McLarney, counsel for defendant

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT**

Based on the evidence introduced at the

trial of the above captioned summary process action the Court makes the following findings:

1. The Lillis Family Trust is the owner of a two (2) unit residential building at 85 McBride Street which is situated in the Jamaica Plain section of Boston, Massachusetts. Martin Lillis (hereinafter "the landlord") has managed the property at all times material to this case.

2. Mr. and Mrs. Thomas Pomakis (hereinafter "the tenants") rented apartment #2 at 85 McBride Street in 1970 and have occupied the premises since that time. The premises at 85 McBride Street consists of (1) an apartment on the first floor; (2) the tenants apartment on the second floor consisting of a kitchen, bathroom, livingroom and bedroom and; (3) an attic above the defendants apartment. The landlord gave the tenants in both apartments permission to use the attic for storage. In about 1975, the tenants had a second child and without the landlord's permission or knowledge began to use a portion of the attic as a second bedroom for their children.

3. The contract rent as of April 1982 was one hundred and forty-five dollars ($145) per month payable on the first of the month. By letter dated April 27, 1982, the landlord sent the tenants a Notice of Termination of Tenancy and offered the tenants a new tenancy commencing June 1, 1982 at the rate of three hundred and twenty-five dollars ($325) per month. At that time, the landlord was attempting to sell the property and hoped to make the property more marketable by raising the rents.

4. After receiving the notice of rent increase, the tenants contacted counsel who apparently advised them to write a letter to the landlord notifying him that they were withholding their ·rent on account of code violations. The letter of rent withholding was on a form letter which included the following "these violations include, but are not limited to:". There were no code violations listed in the letter. The landlord received this letter in early May 1982. He then called the tenant to find out what violations she was talking about since he had no prior notice of any defects. Mrs. Pomakis refused to give him any information and told him that he would be hearing from her attorney. The landlord had not been in the defendants apartment since 1970. Between 1970 and April of 1982, the tenants asked him to make repairs three (3) or four (4) times and he always responded promptly by sending a repairman to make the needed repairs. There had been no requests for repairs for several years prior to May of 1982. On or about May 18, 1982, the tenants had the Housing Inspection Department of the City of Boston inspect their apartment and the attic area of the building. The Housing Inspection Department wrote up a number of violations and served them on the landlord all on that same date. The landlord immediately engaged workmen to correct the defects. The tenants let the workmen in initially but then refused to let them in sometime in late May. The landlord then complained to the Housing Inspection Department concerning the tenants refusal to permit him to make the repairs. On June 9, 1982 the Housing Inspection Department ordered the tenants to make their apartment available to the landlord for purposes of repairs. The tenants then complied with that Order. No rent was paid when due in June and the landlord sent the tenants a Notice to Quit for non-payment of rent. The tenants did not tender any rent after that date.

5. In the tenants answer, they assert defenses pursuant to G.L.ch. 239, sec. 8A, the so called rent withholding statute and a defense pursuant to G.L.ch. 239, sec. 2A (retaliation). In addition, the tenants assert a counterclaim for breach of the implied warranty of habitability and a counterclaim pursuant to G.L.ch. 93A. The counterclaims seek damages from January 1976 forward.

6. It is clear from the evidence that the tenants were perfectly happy with their apartment until the landlord attempted to raise their rent. The tenants then

contacted counsel who had them commence withholding their rent on account of code violations which had never been brought to the landlord's attention. When the landlord asked Mrs. Pomakis to identify the code violations so he could correct them in early May of 1982 she refused to tell him. Later in May of 1982 when he was in the process of correcting the code violations identified by the Housing Inspection Department, Mrs. Pomakis refused to grant workmen access to complete the repairs and the landlord was not let back in until the Housing Inspection Department ordered them to. As of the time of trial, a few of the defects had not been corrected. However, almost all of those defects involved the attic area of the building which was not rented for residential purposes. The landlord attempted to repair the cracked tiles on the defendants kitchen floor but did not do so after Mrs. Pomakis asked him not to because she did not like the replacement tiles.

7. With respect to the tenants' retaliation defense, I find that the evidence fails to support it. This eviction action is based on non-payment of rent. The landlord always responded to the tenants' requests for repairs and commenced this action after the tenants refused to pay rent and refused to grant him access for purposes of making repairs.

8. With respect to the tenants' G.L.ch. 239, sec. 8A defense, I find that they are not entitled to a defense pursuant to said statute on the facts of this case where the tenants refused to disclose the nature of the alleged defects and refused to grant the landlord access to the apartment for purposes of making repairs.

9. With respect to the tenants' warranty of habitability counterclaim, the tenants are not entitled to claim an abatement in rent where the landlord has no notice of the defect or where the tenant interferes with the landlord's ability to correct defects. **Berman & Sons v. Cynthia Jefferson,** Mass. Adv. Sh. (1979) 2461. The defects in the rented portion of the premises were promptly repaired and there is no evidence that the value of the apartment was diminished as a result of those conditions. The tenants have no claim with respect to the conditions in the attic since that area was not rented for residential purposes. With respect to the failure of the landlord to post his name in the common hallway and with respect to the failure to have a railing in the common area of the building, there was no evidence that these conditions diminished the value of the tenants apartment. The only defect inside of the apartment that the landlord had constructive notice of prior to May 1982 was the lack of a sink in the bathroom. The bathroom adjoined the kitchen which did have a sink and there was no evidence that the lack of a sink in the bathroom diminished the value of the apartment.

10. With respect to the Chap. 93A counterclaim, I find that the landlord did not take any retaliatory actions against the tenants and that the landlord did not engage in any unfair and deceptive trade practices prohibited by G.L.ch. 93A. Prior to May 1982, the tenants only made approximately three (3) or four (4) complaints during the twelve (12) years of their tenancy and in each instance the landlord promptly responded and made repairs. After receiving notice of defects the landlord promptly sent workmen to remedy defects in the premises rented to the tenants.

11. The Court has the discretion, pursuant to G.L.ch. 239, sec. 9, to grant a stay of execution where the eviction is not as a result of the fault of the tenant. In this case, although there was a Notice to Quit for non-payment of rent served on June 7, 1982, there was in fact no non-payment of rent at that time since the defendants tenancy had been terminated and, under circumstances, the rent was not payable until the end of the term. For this reason, the Court will grant the defendants a stay of execution until

January 31, 1983 on the condition that they become current in their rent at the rate of one hundred and forty-five dollars ($145) per month within ten (10) days of the date of this Order.

Accordingly, it is hereby ORDERED that:

1. Judgment enter in favor of the plaintiff for possession with execution stayed until January 31, 1983 on the condition that within ten (10) days of the date of this Order the defendants pay to the plaintiff all rent owed at the rate of $145 per month and on the condition that they continue to pay the landlord the sum of $145 per month so long as they continue in occupancy.

2. Judgment in favor of the plaintiff with respect to the defendants' counterclaims.

Patrick J. King, Associate Justice

### NOTICE OF JUDGMENT ENTERED

This action came on for hearing before the Court, King, J., presiding, and the issues having been duly heard and findings having been duly rendered, it is ORDERED and ADJUDGED under Rule 10 of the Uniform Rules of Summary Process, judgment entered for the Plaintiff for possession.

Accordingly, judgment enters at 10:00 A.M. this 8th day of October, 1982.

1. Execution is stayed until January 31, 1983 on the condition that within 10 days of the date of this Order the defendants pay to the plaintiff all rent owed at the rate of $145 per month.

2. Judgment in favor of the plaintiff with respect to the defendants counterclaims.

3. Execution is also stayed on the condition that they continue to pay the sum of $145 per month so long as they continue in occupancy.

Robert L. Lewis
Clerk/Magistrate